FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

2025 OCT -3  PM 1: 20

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| **GILBERTO LOPEZ,** | § | |
| **Petitioner,** | § | |
| | § | **EP-24-CV-353-DCG** |
| **v.** | § | **EP-20-CR-1567-DCG-1** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

### MEMORANDUM OPINION AND ORDER

Gilberto Lopez, Reg. No. 25108-180, challenges his sentence through a *pro se* a motion to vacate, set aside or correct a sentence under 28 U.S.C. § 2255. Mot. to Vacate, ECF No. 257.[1] His opposed motion is denied.

### BACKGROUND

Lopez is a 42-year-old inmate currently confined to the Federal Correctional Institution in Florence, Colorado. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc/ (search for Reg. No. 25108-180, last visited Sept. 29, 2025). His anticipated release date is December 30, 2038. *Id.*

On April 12, 2020, Customs and Border Protection (CBP) officers encountered Lopez as he drove a GMC Yukon into the United States from Mexico at the Paso Del Norte Port of Entry in El Paso, Texas. Presentence Investigation, ECF No. 211 at ¶ 3. They referred Lopez to a secondary inspection area where a canine alerted to the presence of narcotics in the vehicle. *Id.* at ¶ 4. They discovered two black bundles concealed under the muffler's heat shield which contained 680 grams of 80 to 89 percent pure methamphetamine. *Id.* They found Lopez's fingerprint on the inside

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in EP-20-CR-1567-DCG-1. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

packaging of one of the bundles. *Id.* They conducted a pat-down on Lopez which revealed a KY lubricant jelly. Mem. Order, ECF No. 203 at 2–3. As a result, they suspected Lopez had contraband hidden in his body cavities. *Id.* at 2. They ordered Lopez to pull down his pants and squat. *Id.* Their examination did not reveal any evidence of contraband. *Id.*

Upon acknowledging his constitutional rights, Lopez stated he knew who had placed the methamphetamine in the truck. Presentence Investigation, ECF No. 211 at ¶ 6. He also admitted he was not prosecuted after he was stopped a few weeks earlier while heading into Mexico with 7.6 grams of methamphetamine, $4,380 in U.S. currency, and a Taurus PTI handgun. *Id.*

Lopez was indicted for conspiring to import more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 963, 952(a), 960(a)(1) & 960(b)(1)(H); importing more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) & 960(b)(1)(H); conspiring to possess more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) & 841(b)(1)(A)(viii); and possessing with the intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(viii). Indictment, ECF No. 16.

Lopez changed attorneys three times before the Court allowed him to waive his Sixth Amendment right to counsel and assume full responsibility for his defense. Def.'s Mot., ECF No. 49; Order, ECF No. 66. He filed unsuccessful *pro se* motions to suppress the evidence, dismiss the indictment, and obtain a speedy trial. Def's Mot. to Suppress, ECF No. 48; Def's Mot. to Dismiss, ECF No. 75; Def's Mot. for Speedy Trial, ECF No. 57. He represented himself throughout a four-day trial and was convicted by a jury on all counts of the indictment. Jury Verdict, ECF No. 192.

Lopez had multiple prior convictions including two federal felony convictions for importing marijuana in cause numbers EP-02-CR-886-DB and EP-05-CR-2548-FM in the Western

2

District of Texas. Presentence Investigation, ECF No. 211 at ¶¶ 30, 32. Based upon a total offense level of 34 and a criminal history category of VI, his advisory guideline range was 262 to 327 months' imprisonment. Statement of Reasons, ECF No. 240 at 1. He was sentenced at the bottom of the range to 262 months' imprisonment. J. Crim. Case, ECF No. 239.

In his direct appeal, Lopez's appointed appellate counsel raised five issues. *United States v. Lopez*, No. 22-50944, 2023 WL 6533454 (5th Cir. Oct. 6, 2023). First, she argued that the district court improperly refused to provide an interpreter for Lopez at trial. *Id.* at *1. Second, she alleged that the prosecutor engaged in misconduct. *Id.* Specifically, she asserted that the prosecutor (1) noted during voir dire that Lopez was detained pending trial, and (2) adduced testimony that Lopez waived a preliminary hearing. *Id.* Third, she claimed that Lopez's right to a fair trial was denied based on several errors which cumulatively deprived him of due process. *Id.* at *2. Fourth, she argued that the district court erred in permitting Lopez to proceed *pro se* because he did not unconditionally waive his right to counsel. *Id.* She maintained that Lopez's waiver of his right to counsel was conditioned upon his ability to prepare for trial by reviewing discovery in his confinement facility's law library and she alleged that this condition was not met. *Id.* Finally, she argued that the jury instructions omitted an element from the conspiracy charges when they did not require a finding that Lopez knew the conspiracies involved the 500 grams of methamphetamine needed to subject him to a mandatory minimum sentence of ten years in prison. *Id.*

The Fifth Court of Appeals rejected all the appellate counsel's arguments and affirmed the judgment. *Id.* at *3.

In his § 2255 motion, Lopez raises six issues related to his appellate counsel. He claims that his appellant counsel was ineffective for failing to challenge the: (1) district court's denial of

his motion to dismiss the indictment because the Government failed to preserve the video of his arrest; (2) district court's denial of his motion to suppress his statements; (3) violation of his speedy trial rights; (4) prosecutor's misconduct; (5) conspiracy counts; and (6) weight of the methamphetamine. Mot. to Vacate, ECF No. 257 at 4–10. He claims that his appellate attorney "did not appeal the issues we discussed, and this is the reason for this ineffective assistance of counsel claim." *Id.* at 15. He asks, "that this conviction be reversed and the indictment be dismissed." *Id.* at 13.

## STANDARD OF REVIEW

Section 2255 "'provides the primary means of collateral attack on a federal sentence.'" *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (quoting *Cox v. Warden*, 911 F.2d 1111, 1113 (5th Cir. 1990)). But "it does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). It is not a "substitute for direct appeals." *United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001); *see also United States v. Frady*, 456 U.S. 152, 167 (1982) (imposing a "cause and actual prejudice" standard on motions for collateral relief when no objection was made on direct appeal); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating "[w]here the petitioner — whether a state or federal prisoner — failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice.'"). It identifies only four grounds on which a prisoner may obtain relief: (1) the "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). Consequently, § 2255 does not permit relief on a claim of error that is neither constitutional nor

jurisdictional unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). It also requires the prisoner to bear the burden of establishing a claim of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) (citing *United States v. Kastenbaum*, 613 F.2d 86, 89 (5th Cir. 1980)). It permits a court to "vacate and set the judgment aside" if a prisoner's claims are meritorious and to "discharge the prisoner or resentence him or grant [him] a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). But it also allows a court to dismiss the motion "[i]f it plainly appears from the motion ... and the record of prior proceedings that the moving party is not entitled to relief." 28 U.S.C. foll. § 2255 Rule 4(b); *see also* 28 U.S.C. § 2255(b); *United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990) ("Faced squarely with the question, we now confirm that § 2255 requires only conclusive evidence—and not necessarily direct evidence—that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").

Despite these limitations, a defendant may still bring a Sixth Amendment "ineffective-assistance-of-counsel claim ... in a collateral proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 504 (2003). If he does, his claim is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, he has the burden of showing (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94. To be clear, a defendant must meet the two-part *Strickland* test for most complaints regarding ineffective assistance claims against both his trial and appellate counsel. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994).

To establish deficient performance, a defendant must prove that his counsel's assistance fell "'below an objective standard of reasonableness.'" *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (quoting *Strickland*, 466 U.S. at 688). But this standard of reasonableness does not mean his "[a]ppellate counsel is ... deficient for not raising every non-frivolous issue on appeal." *United States v. Phillips*, 210 F. 3d 345, 348 (5th Cir. 2000). Indeed, his appellate counsel is not required to present patently frivolous arguments on appeal—or even to present all non-frivolous points that could have been raised. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994). It requires that his appellate counsel "research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). It means that his counsel must make "[s]olid, meritorious arguments based on directly controlling precedent." *Id.* It requires that a defendant show that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Lincks*, 82 F.4th 325, 330–31 (5th Cir. 2023).

To establish prejudice, a defendant must prove that the overlooked or inadequately addressed issue was sufficiently meritorious that his "counsel should have raised it on appeal." *Phillips*, 210 F.3d at 348. Moreover, he "must show ... that the appeal would have had, with reasonable probability, a different outcome if the attorney [had] adequately addressed the issue." *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

## ANALYSIS

### A. Motion to Dismiss Indictment

In his § 2255 motion, Lopez first alleges that his appellate counsel provided constitutionally ineffective assistance when she failed to challenge the Court's denial of his motion to dismiss the indictment. Mot. to Vacate, ECF No. 257 at 4.

6

In his motion to dismiss, Lopez argued that he could not prepare a defense because the CBP officers destroyed the video of his arrest and subsequent search:

> In order to prepare my defense, I have been asking the court for all videos relating to my arrest at Paso del Norte Port of Entry on April 12, 2020. Prosecution did not turn over: 1) after taken from secondary into CBP headhouse video and 2) detention and strip search of defendant conducted by CBP officers. With this evidence now destroyed there is no way the Defendant can prepare the defense for a fair trial. The court must see that there is only bad faith to this withholding and destruction of evidence: Chapter 37 Title 8 sec. 37.09 tampering with or fabricating physical evidence (1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding; (2) makes presents, or uses record, document, or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding.

Mot. to Dismiss, ECF No. 144 at 1–2. Lopez claimed that "[t]he CSP ... video footage was requested ... to not only show how a partial fingerprint ... could have made it onto one of the two bundle wrapped packages. But to also show the aggravated sexual assault that happened to Mr. Lopez by the unknown CSP Officer (Canine Handler)." Mem. in Supp., ECF No. 258 at 7.

The Government violates a defendant's right to due process when: (1) it destroys evidence whose exculpatory significance is "apparent" before destruction; and (2) the defendant remains unable to "obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). Dismissal of an indictment is warranted when a defendant meets his burden of showing that the Government destroyed evidence with exculpatory significance apparent before destruction. *Id. at* 487. If the exculpatory value of the evidence is undetermined but is "potentially useful" to the defense, then a defendant must show that the Government acted with bad faith in destroying the evidence. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). But where the exculpatory value of the evidence destroyed is undetermined and the defendant meets his burden of showing the Government acted in bad faith, the only relief warranted

is to suppress the prosecution's most probative evidence against the defendant. *Trinbetta*, 467 U.S. at 487.

The Court held an evidentiary hearing on Lopez's motion. Mem. Order, ECF No. 203 at 1. The Court observed that the allegations of sexual abuse were "not relevant to [Lopez's] innocence and [were] thus not exculpatory." *Id.* at 10. It further noted that the Government proffered testimony that the fingerprint found on the methamphetamine bundle was not on its outside wrapping but on the ... inside." *Id.* 11. Accordingly, it found that the videos were not probative as to whether Lopez committed the drug trafficking offenses alleged in the indictment. *Id.* at 10. It also found that "the exculpatory value of the videos ... was not apparent before their destruction." *Id.* at 11. It further found that Lopez failed to present any evidence indicating or suggesting that the Government destroyed the videos in bad faith. *Id.* It concluded that Lopez failed to meet his burden of showing that the Court should dismiss the indictment under a destruction of the evidence theory. *Id.* at 12.

The Fifth Circuit "reviews the denial of a motion to dismiss an indictment ... de novo." *United States v. Castelan-Jaimes*, 575 Fed. App'x 253, 254 (5th Cir. 2014) (citing *United States v. Villanueva-Diaz*, 634 F.3d 844, 848 (5th Cir. 2011)). But it accepts the trial court's "factual findings in connection with the ruling ... unless clearly erroneous." *United States v. Anderson*, 558 F. App'x 454, 460 & n.17 (5th Cir. 2014) (citing *United States v. Villanueva-Diaz*, 634 F.3d 844, 848 (5th Cir. 2011)).

Lopez fails to explain how the Court's factual findings were clearly erroneous. He fails to identify the arguments his appellate attorney should have made before the Fifth Circuit to support any claim that the Court somehow erred in its factual findings or in its legal conclusion. He simply argues that his attorney should have raised some sort of argument regarding the Court's denial of

his motion to dismiss. His conclusory argument does not show that his attorney's performance was constitutionally deficient or, if the performance was deficient, how that deficiency caused him prejudice.

### B. Motion to Suppress

Lopez maintains that his appellate attorney provided constitutionally ineffective assistance when she failed to challenge the Court's denial of his motion to suppress the statements he made on the day of his arrest. Mot. to Vacate, ECF No. 257 at 5. He claims that he made the statements under duress. *Id.* He explains that he:

> ... experienced tortorus [sic] conditions to include: Intimidation tactics, being held at gunpoint, while being subjected to a degrading aggravated sexual assault. [He] was held for many hours in a freezing room. The temperature was being controlled by CBP Officers. He was also denied food and a blanket to keep warm. This is in addition to the strip search ... This intimidation tactic went on for hours. [He] was denied food and sleep by the CBP Officers who were banging on the window every time they seen [him] dozing off. This was all done to [him] before he gave any statements. The Statements were not the product of a rational intellect and a free will and was involuntary.

Mem. in Supp., ECF No. 258 at 9.

The Court denied Lopez's motion to suppress. Order, ECF No. 120 at 3. It explained that Lopez (1) put forward only "vague, conclusory allegations that law enforcement officers illegally obtained 'alleged statements' made by [him] and ... conspired to tamper and fabricate material evidence before the Grand Jury that indicted him," (2) "failed to identify exactly what statements he [sought] to suppress or how exactly law enforcement officers allegedly committed perjury and evidence tampering," and (3) failed to "identify what factual disputes [existed] in the record that would justify holding an evidentiary hearing." *Id.* at 2. It noted that Lopez did not, therefore, comply with Federal Rule of Criminal Procedure 47(b), which required him to "state the grounds on which it is based and the relief or order sought." *Id.* at 1–2. It also observed that "[a]n

evidentiary hearing [was] required on a motion to suppress *only* when necessary to receive evidence on an issue of fact." *Id.*; *see United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (citation omitted). It concluded that it was "unable to identify and understand which evidence was allegedly illegally obtained, the factual basis supporting [Lopez's] allegations of illegal procurement, or the legal basis justifying the suppression of evidence." *Id.* at 2. Furthermore, it noted that the Government maintained Lopez "never made any confession relevant to any of the crimes which he was charged." *Id.* Hence, it denied Lopez's motion to suppress the statements he made on the day of his arrest. *Id.* at 3.

On appeal, "the district court's findings of facts are reviewed for clear error, viewing the evidence in the light most favorable to the government. The district court's conclusions of law are reviewed de novo. The panel may affirm the district court's decision on any basis established by the record." *United States v. Hernandez*, 647 F.3d 216, 218 (5th Cir. 2011); *see also United States v. Spears*, 552 F. App'x 292, 293 n.2 (5th Cir. 2013) (citing *United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003)).

Lopez fails to explain how the Court's findings of fact in its order were clearly erroneous. He fails to identify any legal argument that his appellate attorney should have made to show that the Court erred. As a result, he does not meet his burden of showing that his appellate attorney's performance was constitutionally deficient or that such a failure caused him prejudice.

### C. Speedy Trial

Lopez notes he requested a speedy trial, but claims the Court ignored his request and gave him the first available trial date instead.  Mot. to Vacate, ECF No. 257 at 7.

On January 8, 2021, Lopez did file a motion for speedy trial. Mot. for Speedy Trial, ECF No. 57. In response, the Government noted that jury trials were suspended in the Western District

of Texas until February 28, 2021, due to the COVID-19 pandemic. Gov't's Resp., ECF No. 62. In a subsequent order, the Court remarked that that jury trials were suspended in the Western District of Texas until at least March 31, 2021, due to the COVID-19 pandemic. Order, ECF No. 68, at 1. Additionally, the Court excluded the period to the date of the jury trial which the Court set for May 17, 2021, from the Speedy Trial Act clock, based on the pandemic and the exigent circumstances caused by the pandemic, and because "the ends of justice outweigh[ed] the best interests of the public and the Defendant in a speedy trial. *Id.* at 2.

Notably, Lopez neither moved to dismiss the indictment nor offered any argument or evidence as to how he was being denied a speedy trial. His "[f]ailure ... to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere [constituted] a waiver of the right to dismissal" under18 U.S.C. § 3162(a)(2). *United States v. Jackson*, 30 F.3d 572, 575 (5th Cir. 1994); *United States v. Clark*, 289 F. App'x 44, 38 (5th Cir. 2008).

Lopez cannot meet his burden of showing that an appeal on the speedy trial issue would have had, with reasonable probability, a different outcome even if the attorney adequately addressed the issue.

### D. Prosecutorial Misconduct

Lopez maintains that the prosecutor engaged in various forms of misconduct. Mot. to Vacate, ECF No. 257 at 8. Specifically, he notes that the prosecutor obtained testimony that Lopez waived his preliminary hearing and then suggested that he waived the hearing because he was guilty. Mem. in Supp., ECF No. 258 at 15–16. He claims that the prosecutor threatened him with an enhanced sentence if he testified to keep him from presenting his case. *Id.* at 15. He asserts that the prosecutor relied on perjured testimony concerning the ownership of the GMC Yukon with the hidden methamphetamine to suggest his guilt. *Id.* at 16–17.

To prevail on a prosecutorial misconduct claim, a habeas corpus petitioner must show that the prosecutor's actions "'so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process.'" *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (quoting *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir.1996)). "Prosecutorial misconduct is not a ground for relief unless it casts serious doubt upon the correctness of the jury's verdict." *Styron v. Johnson*, 262 F.3d 438, 449 (5th Cir. 2001). "Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotation marks and internal citations omitted).

> To establish a due process violation based on the State's knowing use of false or misleading evidence, [a habeas petitioner] must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false. Evidence is false if, inter alia, it is specific misleading evidence important to the prosecution's case in chief. False evidence is material only if there is any reasonable likelihood that [it] could have affected the jury's verdict.

*Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997) (internal citations and quotation marks omitted

### (1) Comment on Waiving Preliminary Hearing

Lopez notes that "the prosecutor adduced testimony that ... Lopez waived the preliminary hearing." Mem. in Supp., ECF No. 258 at 15. He observes that the prosecutor then suggested that Lopez only waived the hearing because he was guilty. *Id.* at 16.

In his direct appeal, Lopez alleged "that the prosecutor engaged in misconduct [when he] noted during voir dire that Lopez was detained pending trial. Also, he assert[ed] that the prosecutor adduced testimony that he waived a preliminary hearing." *Lopez*, 2023 WL 6533454 at *1.

In rejecting Lopez's claim concerning the preliminary hearing, the Fifth Circuit noted that "[t]he reference and discussion were limited, did not necessarily connote his guilt, were not

invoked as a basis for a finding of guilt, and were insignificant in the context of the trial as a whole." *Id.* Consequently, it concluded that "the incidents were inconsequential to the jury's verdict because the evidence was easily sufficient to support a conviction. *Id.*

.

"It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980) ("The court is not required on section 2255 motions to reconsider claims of error raised and disposed of on direct appeal"). Therefore, Lopez cannot raise this argument concerning his preliminary hearing in his § 2255 motion.

### (2) Comment on Impeachment

Lopez claims that the prosecutor told him before trial that he would receive an enhanced sentence if he testified. Mem. in Supp., ECF No. 258 at 15. As a result, he did not testify and did not have an opportunity to fully present his case. *Id.* In an earlier declaration, Lopez explained:

> I did not testify in my defense because I was told that I could be impeached with my prior convictions, and also because the prosecutor told me that I would get a higher sentence due to section 3C1.1. I don't know if that is on the record, but I have a very specific recollection of that conversation. I was told by the prosecutor that I was looking at up to 15 years and 8 months. No one ever advised me that the guidelines could be 30–life.

Decl. of Gilberto Lopez, ECF No. 219-1 at 5.

Lopez had two prior felony convictions for importing marijuana, three prior felony convictions for assault on a family member, and one prior felony conviction for forgery. Presentence Investigation, ECF No. 211 at ¶¶ 30, 32, 33, 35, 36, 37. According to Federal Rule of Evidence 609(a)(1), evidence of his prior convictions could have been used to impeach his credibility as a witness. Fed. R. Evid. 609(a)(1). Lopez cannot show the prosecutor's comments

so infected his trial with unfairness as to make his resulting conviction a denial of due process.

*Barrientes*, 221 F.3d at 753.

### (3) Inconsistent Witnesses Statements

Lopez asserts that the prosecutor relied on perjured testimony concerning the ownership of

the GMC Yukon Lopez drove into the United States from Mexico on April 12, 2020. Mem. in

Supp., ECF No. 258 at 16–17. He explains an affidavit and a report of investigation prepared by

HSI Lead Investigator Crystal Hernandez contained conflicting information:

> On April 14, 2020, an affidavit was filled out and signed by HSI Lead Investigator "Crystal Hernandez." On the affidavit, Second Paragraph, Lines 20 to 22, states Mr. Lopez said the vehicle was his, and he was responsible for everything in it."
>
> On April 27, 2020, an official "Report of Investigation" was filled out by HSI Lead Investigator Crystal Hernandez, where on the same paragraph listed above it states "when Officer Tarango asked whose car it was the passenger "Roxanna Perez" said it was hers.
>
> ....
>
> The affidavit by the former HSI Lead Investigator Crystal Hernandez with the outright lie, saying that Mr. Lopez took ownership of the vehicle and its contents was used throughout this case: 1) First, Probable Cause, 2) Second, Grand Jury, 3) Third, Report of Fact on Plea Offering, and 4) Fourth, Opening Statement at Trial to Jury from Prosecutor as Statement of Fact. This lie by Crystal Hernandez and co-signed by her direct supervisor along with the prosecutor shows the corruption and the conspiracy against rights under the color of law just assured a conviction. This conspiracy violated Mr. Lopez's constitutional right, and fundamental right to a fair trial.

Lopez argues that the prosecutor had a duty to disclose this perjured testimony. *Id.* at 17 (citing

*Mooney v. Horohan*, 294 U.S. 103 (1935) (holding that a state actor violates a criminal defendant's

due process rights by the knowing use of perjured testimony)). He further claims that the

prosecutor erred when he "coached" an expert fingerprint witness to change his testimony after he

first said the fingerprint on the methamphetamine packaging belonged to "Gonzalez." *Id.* at 18.

The facts in this case are that Lopez drove a GMC Yukon into the United States from Mexico at the Paso Del Norte Port of Entry in El Paso, Texas. Presentence Investigation, ECF No. 211 at ¶ 3. A search of his truck revealed two black bundles under the muffler's heat shield which contained methamphetamine. *Id.* Lopez's fingerprint was found on the inside packaging of one of the bundles—and the expert fingerprint witness misspoke when he said the fingerprint belonged to "Gonzalez." *Id.* at ¶ 4. Upon acknowledging his constitutional rights, Lopez stated he knew who had placed the methamphetamine in the truck. *Id.* at ¶ 6; *see* Statement of Rights, ECF No. 174.

Lopez was indicted for conspiring to import more than 500 grams of methamphetamine, importing more than 500 grams of methamphetamine, conspiring to possess more than 500 grams of methamphetamine, and possessing with the intent to distribute more than 500 grams of methamphetamine. Indictment, ECF No. 16.

Ownership of the GMC Yukon was not material and was not important to the prosecution's case in chief. *Nobles*, 127 F.3d at 415. The prosecutor's actions did not infect the trial with unfairness to make the resulting convictions a denial of due process. *Barrientes*, 221 F.3d at 753.

Lopez cannot meet his burden of showing that his appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed this issue. *Dovalina*, 262 F.3d at 474–75.

### E. Conspiracy

Lopez complains his appellate counsel provided ineffective assistance when he failed to challenge the two conspiracy counts. Mot. to Vacate, ECF No. 257 at 10. He reasons he "was taken to trial as a single person. He was never presented with discovery naming a co-conspirator." *Id.*

"To establish a conspiracy, the government must prove that: (1) an agreement existed between two or more persons to violate federal narcotics law, (2) the defendant knew of the

existence of the agreement, and (3) the defendant voluntarily participated in the conspiracy."

*United States v. Ochoa*, 667 F.3d 643, 648 (5th Cir. 2012).

The Government asserts—and Lopez does not dispute—the record reflects the following

evidence that there was another coconspirator:

> Movant implied that the woman who was the passenger in the vehicle was implicated in the conspiracy when he immediately claimed without being asked that "[t]he girl had nothing to do with it." Jury Trial Transcript, Vol. 12, at 48, lines 13-23.

> When HSI Special Agent Luis Del Mercado asked Movant "if he had information on narcotics smuggling and also on stash houses located in El Paso," Movant responded, "Yes, I have all of that. I could give you all of that." *Id.*, at 49, lines 20-23 and at 50, at lines 1-4.

> After Agent Del Mercado advised Movant that crystal methamphetamine was found in his car and he was looking at 10 years in prison, Movant stated "I know how much time I'm looking at, so that's why I want to help you arrest them." *Id.*, at 50, lines 12-18.

> Movant implied that the woman who was the passenger in the vehicle was involved in the conspiracy when he said that he did not know the woman well enough that he would sacrifice himself for her. *Id.*, at 51, lines 1-12 and at 57, at lines 6-11.

> When Movant was questioned about who might have placed the methamphetamine in the vehicle, Movant insisted that it was not the woman passenger because she was with him the whole time, and as a result he implied that it had to be another coconspirator who placed the methamphetamine in in the vehicle. *Id.*, at 52, at lines 11-19.

> When Movant was asked if he was aware that he was in possession of crystal methamphetamine, Movant stated, "They put it there." *Id.*, at 52, lines 23-25 and at 53, lines 1-8.

> When Movant was told that the approximate weight of the methamphetamine was two kilograms, Movant stated that "I think I know who put them there." *Id.*, at 54, lines 7-13.

> Movant stated that he would be able to identify the individual who placed the methamphetamine in the vehicle depending on where the drugs were found in the vehicle. *Id.*, at 54, lines 14-19.

When Movant was told that the methamphetamine was deeply concealed, Movant said, "Then I know who placed them there. *Id.*, at 54, lines 19-23.

Movant stated, "if you cut me a deal, if you let me go, I can give you two cars that are going to cross drugs right now." *Id.*, at 55, lines 3-5.

Movant stated, "if you give me a deal, I could give you five to six people involved in narcotic smuggling and one of those sells a lot of marijuana, heroin, and methamphetamine." *Id*, at 55, lines 17-20.

Agent Del Mercado stated that Movant had expressed that he could give him "a lot of names" of people who were trafficking drugs and said there were "five or six" involved in drug trafficking. *Id.*, at 56, lines 2-6.

Gov't's Resp., ECF No. 263 at 14–15.

In sum, Lopez made numerous references to possible co-conspirators during his interviews. These references were more than sufficient to show that there was another conspirator. Challenging his conviction on the basis there were no co-conspirators would have been unavailing. Under these circumstances, Lopez cannot show his appellate counsel's performance was either deficient or prejudiced his cause.

### F. Weight of Methamphetamine

Finally, Lopez claims that his appellate counsel was ineffective for failing to contest the weight of the methamphetamine. Mot. to Vacate, ECF No. 257 at 10. He opines that the packaging alone without the methamphetamine weighed a total of 200 grams—which meant the methamphetamine weighed less than 500 grams. *Id.*

The record shows that the Government charged each of Lopez's offenses involved "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine" in violation of 21 U.S.C. § 841. Indictment, ECF No. 16. It shows that Drug Enforcement Administration Senior Forensic Chemist Phanneth Som testified at trial that the net weight of the drug samples he received was 512.1 grams. Corrected Appellant's Brief, *United States v. Lopez*,

Case Number 22-50944 before the Fifth Circuit, Doc. No. 44 at 37. It also shows that Lopez conceded that the net weight of the methamphetamine was 512.1 grams in his corrected appellant brief. *Id.*

"[S]ection 841 does not distinguish among types of methamphetamines." *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995). The Sentencing Guidelines do, however, distinguish between methamphetamine, methamphetamine (actual), and methamphetamine "Ice." U.S. SENT'G GUIDELINES MANUAL §2D1.1 (U.S. SENT'G COMM'N 2018). The Sentencing Guidelines explain that "[t]he terms 'PCP (actual)', 'Amphetamine (actual)', and 'Methamphetamine (actual)' refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual). In the case of a mixture or substance containing PCP, amphetamine, or methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual), amphetamine (actual), or methamphetamine (actual), whichever is greater." U.S. SENT'G GUIDELINES MANUAL §2D1.1 cmt. n.(B) (U.S. SENT'G COMM'N 2018).

A laboratory report indicated the CBP officers seized methamphetamine with a purity level between 80% to 89%, which was the equivalent of 442 grams of methamphetamine hydrochloride Ice. Presentence Investigation, ECF No. 211 at ¶ 4. Accordingly, Lopez was "held accountable for 442 grams (net weight) of methamphetamine hydrochloride 'ice'" for sentencing purposes. *Id.* at ¶ 8.

Lopez offers no evidence to contradict the calculations of the weight of the methamphetamine. His appellate attorney accordingly could not argue that the net weight of the mixture containing methamphetamine was less than 500 grams. Lopez cannot now show his

attorney was ineffective for not arguing on appeal that the weight of the mixture of methamphetamine was somehow less than 500 grams. As a result, he cannot show that his attorney's performance was constitutionally deficient by not raising the weight of the methamphetamine on appeal and he cannot show that if there was such a deficiency, that deficiency caused him prejudice.

## EVIDENTIARY HEARING

A movant must produce "independent indicia of the likely merit of [his] allegations" to warrant an evidentiary hearing. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *Cervantes*, 132 F.3d at 1110). Once a movant presents such independent evidence, "'[a] motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.'" *Cavitt*, 550 F.3d at 442 (quoting *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992)). When a movant's files and records "make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 450 (5th Cir. Unit B 1981).

Lopez has failed to produce independent indicia of the likely merit of his allegations. The motion, files, and records in this case are adequate to dispose fully and fairly of his claims. His cause requires no further inquiry on collateral review—and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). He may not receive a certificate of appealability unless he "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). He "must demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong" when district court rejects his constitutional claims on the merits. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings). He must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" when district court rejects his claims solely on procedural grounds. *Slack*, 529 U.S. at 484.

Reasonable jurists could not debate the Court's reasoning for denying Lopez's claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

The Court will not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court concludes that Lopez has failed to meet his burden of showing his counsel's performance was (1) deficient or (2) prejudiced his defense. *Strickland*, 466 U.S. at 689–94. The Court further concludes that Lopez has failed to successfully assert claims establishing (1) his "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *Seyfert*, 67 F.3d at 546. The Court also concludes that Lopez is not entitled to an evidentiary hearing or a certificate of appealability. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Gilbert Lopez is **DENIED** an evidentiary hearing.

20

**IT IS FURTHER ORDERED** that Gilbert Lopez's *pro se* "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 257) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Gilbert Lopez is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

**SIGNED** this ___2___ day of ~~September~~ October 2025.

**DAVID C. GUADERRAMA**
**SENIOR UNITED STATES DISTRICT JUDGE**